875 So.2d 1133 (2004)
Joshua HARVEY, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-01804-COA.
Court of Appeals of Mississippi.
June 22, 2004.
*1134 B. Leon Johnson, attorney for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
Before KING, C.J., BRIDGES, P.J., and CHANDLER, J.
KING, C.J., for the Court.
¶ 1. Joshua Harvey was convicted of resisting arrest and possession of a firearm by a convicted felon by a jury in the Grenada County Circuit Court. On the charge of resisting arrest, Harvey was sentenced to a term of six months in the Grenada County Jail. On the charge of possession of a firearm by a convicted felon, he was sentenced to a term of three years in the custody of the Mississippi Department of Corrections and ordered to pay court costs. Aggrieved, Harvey raises the following issues on appeal:
I. Whether the trial court erred in denying Harvey's motion for a new trial.
II. Whether the trial court erred in denying Harvey's motion for a directed verdict and motion for judgment notwithstanding the verdict.

FACTS
¶ 2. On June 25, 2001, Officer Parker Mullen of the Grenada Police Department was traveling westbound on Pearl Street in his patrol car. At approximately 9:02 p.m., Officer Mullen heard a woman's voice from a passing car yell, "stop!" Mullen stopped his car, exited, and walked toward the other vehicle which had stopped as well. Mullen stated that a black female got out of the driver's side and a black male got out of the passenger's side of the vehicle. Mullen asked the female if something was wrong. According to Mullen, the female indicated that the black male was "going crazy" and trying to take her money.
¶ 3. At that time, Officer Mullen asked the male what happened. The male indicated that nothing had occurred. The female then stated that this guy had just jumped in her vehicle when she stopped at *1135 the stop sign. Mullen stated, "At that time I ... told the subject I was going to pat him down for any weapons. At that time I went to reach to pat his front pockets down. He kind of squirmed like he did not want me touching him." Mullen called another officer, Garrett Hartley, who was in the area for assistance.
¶ 4. Mullen indicated that he attempted to pat down the male again and the male resisted. According to Mullen, as he reached to touch the male's back pocket, the male snatched away and attempted to run. A struggle ensued and Mullen grabbed the male with both hands and threw him on the ground.
¶ 5. When Officer Hartley arrived, Mullen told him to grab the male's left arm because the male was trying to get something out of his pocket. Mullen stated that as soon as Hartley snatched the male's arm, he saw a chrome-colored pistol in the male's hand and yelled to Hartley that the male had a gun.
¶ 6. Mullen stated that on several occasions the gun was pointed toward his face and he was in fear of being shot in the face. Mullen testified that:
At one time during the struggle the subject stood up on his feet, and I had, I was wrapped around behind him. At that time the gun, the pistol was also pointed at my face again. When I saw it pointed at my face, I loosened my grip and kind of ducked down behind the subject's upper body in case it did go off. When I ducked down, his hands come [sic] out. Officer Hartley's hands come off his, and the subject threw his arms like this (Demonstrating) trying toI thought to try to break me off of him. At that time my grip come off of his body. I grabbed him again, threw him back to the ground, and at that time I was on top of him again. And that's when I sprayed him with OC spray. I told him to quit fighting with me. I sprayed him. That's why I spray people who resist. He gave up, and I placed him in custody.
¶ 7. After the male was handcuffed, Mullen and Hartley looked for the gun, but did not see the gun at the location of the struggle. Officer Hartley stated:
While we were searching, we started knocking on a few doors letting the neighbors, letting the people know what was going on and to see if they minded if we looked in their yards; told them what had happened. And at one of the houses, which was 800 Pearl Street, a man and woman came out and said that they had heard something hit the roof of the house.
¶ 8. Another officer, Mark Beck, assisted in the search and found the gun in the backyard of Angela Wiley, a resident of 800 Pearl Street. Mrs. Wiley testified that she heard something hit the roof of the house the night of June 25, 2001, and gave police officers permission to search the premises. When Beck retrieved a gun from the Wileys' backyard, Hartley identified the weapon as the chrome-colored pistol with the wood handle that the black male, later identified as Joshua Harvey, had when he and the other officers were wrestling with him.
¶ 9. The State also presented evidence that Harvey had been convicted of robbery on August 14, 2000.
¶ 10. The defense called Johnny Carver, who testified that he observed the altercation and did not see a weapon in Harvey's possession.
¶ 11. Harvey was convicted of two counts of resisting arrest and possession of a firearm by a convicted felon. Harvey filed a motion for judgment notwithstanding the verdict indicating that there was only one arrest which occurred and that he *1136 should only be charged with one count of resisting arrest. The trial judge determined that there was only one incident and one arrest which arose out of the incident and dismissed one of the resisting arrest charges. The trial judge granted the motion in part and denied the motion in part.

ISSUES AND ANALYSIS

I.

Whether the trial court erred in denying Harvey's motion for a new trial.
¶ 12. Harvey argues that the trial court erred in denying his motion for a new trial. A motion for a new trial goes to the weight of the evidence. Woodard v. State, 765 So.2d 573(¶ 16) (Miss.Ct.App. 2000). In determining whether the verdict was against the overwhelming weight of the evidence, we look to the following standard of review:
The decision of whether or not to grant a motion for a new trial rests in the sound discretion of the trial judge and should only be granted when the judge is certain that the verdict is so contrary to the overwhelming weight of the evidence that failure to grant the motion would result in an unconscionable injustice. In making the determination of whether a verdict is against the overwhelming weight of the evidence, this Court must view all evidence in the light most consistent with the jury verdict, and we should not overturn the verdict unless we find that the lower court abused its discretion when it denied the motion.
Id. (citations omitted).
¶ 13. In this instance, Harvey claims the State failed to present credible evidence that the pistol was actually in his possession. Harvey maintains that Officers Mullen and Hartley both testified that they only saw an inch of the barrel of the pistol. Harvey claims that they could not have gotten a detailed look at the gun because they were both wrestling with him in the dark. Harvey also argues that because of the area where the pistol was located, anyone could have left it there.
¶ 14. Harvey further maintains that the jury ignored the unbiased testimony of Johnny Carver, who was present during the altercation.
¶ 15. Additionally, Harvey claims that Officer Mullen had no reason to detain and search him.
¶ 16. In this matter, the State presented evidence through the testimony of Officers Mullen, Hartley, and Beck regarding the weapon found after the altercation with Harvey. Officers Mullen and Hartley both testified that Harvey pointed a chrome-colored pistol at them. Officer Beck testified that he found a chrome-colored pistol in one of the residents' yard near the scene of the altercation.
¶ 17. Officer Mullen further testified that he detained Harvey because a female yelled out and sounded like she was in distress. The female told Mullen that Harvey was trying to take her money and that he jumped in the car once she stopped at the stop sign. Mullen stated that once Harvey began to struggle with the officer, the female drove away. The jury determined the credibility of this testimony.
¶ 18. It is well-settled law in Mississippi that matters regarding the weight and credibility accorded the evidence are to be resolved by the jury. Deloach v. State, 811 So.2d 454(¶ 9) (Miss.Ct. App.2001). "[T]he jury is the sole judge of the credibility of witnesses, and the jury's decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the *1137 verdict." Lloyd v. State, 755 So.2d 12(¶ 11) (Miss.Ct.App.1999). Having determined that there is substantial and believable evidence to support the verdict, we find no error in this issue.

II.
Whether the trial court erred in denying Harvey's motion for a directed verdict and motion for judgment notwithstanding the verdict.
¶ 19. Harvey claims that the trial court erred in denying his motions for a directed verdict and judgment notwithstanding the verdict. Harvey argues that the State presented no credible evidence from which a reasonable and fair-minded juror could find beyond a reasonable doubt that he possessed a weapon.
¶ 20. To review Harvey's claim regarding a denial of his motions for a directed verdict and judgment notwithstanding the verdict, this Court adheres to the following standard of review:
The standard of review for a denial of a judgment notwithstanding the verdict and a directed verdict are identical. The Mississippi Supreme Court has stated that in reviewing the trial court's denial of JNOV:
[T]he sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [the defendant's] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence.... We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Beard v. State, 837 So.2d 235(¶ 20) (Miss. Ct.App.2003) (citation omitted).
¶ 21. In this matter, Harvey claims that Officers Mullen and Hartley did not find a weapon on him after the incident. In fact, he claims that because the weapon was not found in the immediate proximity of the struggle, the weapon could have belonged to anyone.
¶ 22. Officers Mullen and Hartley both testified that Harvey pointed a chrome-colored gun at them. However, they did not actually see Harvey throw the weapon. Although Harvey claims the State failed to show that he possessed a weapon, eyewitness testimony placed Harvey at the scene with a gun. Hope v. State, 840 So.2d 747(¶ 11) (Miss.Ct.App.2003). Therefore, this Court finds this issue to be without merit.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF GRENADA COUNTY OF CONVICTION OF COUNT I RESISTING ARREST AND SENTENCE OF SIX MONTHS IN THE GRENADA COUNTY JAIL, COUNT II RESISTING ARRESTDISMISSED, AND COUNT III POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE OF THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO GRENADA COUNTY.
BRIDGES AND SOUTHWICK, P.JJ., THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE OPINION.