# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00703-COA

**LEROY SMITH A/K/A LEROY SMITH JR.**            **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**            **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/12/2023 |
| TRIAL JUDGE: | HON. DEBRA W. BLACKWELL |
| COURT FROM WHICH APPEALED: | FRANKLIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAUREN GABRIELLE CANTRELL |
| DISTRICT ATTORNEY: | SHAMECA SHANTE' COLLINS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/19/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., LAWRENCE AND McCARTY, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1. Leroy Smith Jr. was convicted of burglary of a dwelling and possession of a weapon as a felon following a jury trial in the Franklin County Circuit Court. He was sentenced to concurrently serve twenty years for the burglary conviction and ten years for the felon-in-possession conviction in the custody of the Mississippi Department of Corrections. Smith was also sentenced to serve a consecutive ten-year term in custody pursuant to a firearm enhancement. He appeals, arguing that the verdict was against the overwhelming weight of the evidence. Following a thorough review of the record, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2.     On April 18, 2021, Cynthia Doss alerted authorities of an incident at her home.  Doss informed the responding officers that someone had broken into her home and bedroom.  She identified the assailant as her ex-boyfriend Leroy Smith Jr.  Doss and her then-boyfriend, Horace Simmons, filed signed affidavits against Smith alleging simple assault.  On September 29, 2022, Smith pled guilty to the simple assault charges in both affidavits in justice court.  On January 23, 2023, Smith was indicted by a grand jury of burglary of a dwelling (Count I)[1] and possession of a weapon as a felon (Count II).[2]  Additionally, the indictment included a firearm enhancement pursuant to Mississippi Code Annotated section 97-37-37 (Rev. 2020) and charged Smith as a habitual offender.[3]  Smith's trial took place on May 25, 2023.

¶3.     The State first called Deputy Robert Smith to testify.  The deputy responded to a burglary and assault at approximately 1:00 a.m. on April 18, 2021.  The scene was Doss's home in Roxie, Mississippi.  Upon his arrival, he spoke to Doss and Simmons, who "both had injuries and stated that someone had broke[n] into their home and assaulted them[.]"  Deputy Smith stated that he observed "dark bruising" on Doss's arm and "deep lacerations

---

[1]  The underlying felony added that Smith intended to "commit therein" was listed as simple assault.

[2]  The State and the defense stipulated Smith had been convicted of a felony.  The jury was presented with a redacted version of the stipulation, which did not include the specific prior convictions.

[3]  Smith was originally indicted as a violent habitual offender pursuant to Mississippi Code Annotated section 99-19-83 (Rev. 2020) by mistake, but the State filed a motion to amend the indictment.  The amended indictment charged him as a non-violent habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2020).

to the right side" of Simmons's head, which "was still bleeding profusely" when the deputy arrived.

¶4.    Deputy Smith also stated, "[I]t appeared that someone had used something to either pry into th[e] [kitchen] door to gain access . . . [and] [t]he bedroom door had damage to it where someone had either kicked it or struck it with something to gain entry[.]" He testified that the bedroom was "very disheveled looking," with "articles of clothing, different things knocked over and all over the place[.]" The deputy also stated that he observed "blood splatter" in the bedroom "on the floor just to the left side of the bed" and "a little bit more toward what we consider to be the foot of the bed."

¶5.    Once the deputy completed his investigation, he spent "about twenty minutes" alerting other authorities of the crimes and possible characteristics of the suspect. During that time, he "received another call from dispatch stating that Doss had found another item in the bedding[.]" The deputy went back to the scene, and Doss handed him "a Glock magazine from a pistol." The magazine contained 9mm "full metal jacket bullets" and 9mm "hollow point bullets." Additional bullets were also "found on the floor or . . . in the bedding[.]" The gun, bullets, and photographs from the deputy's investigation at the crime scene were also entered into evidence.

¶6.    The State then called Doss as a witness at trial. She testified that she met the defendant Smith and began dating him in early 2020 for "[m]aybe a good six months if that long." While the two were dating, Smith would spend the night at her home for "two, three nights at the most, but he never lived with [her]." Doss further clarified that she had no

contractual lease with Smith, he never moved his belongings into her home, he did not pay rent or bills for the home, and he never had a key. Doss broke up with Smith "around the end of July" in 2020, but "[h]e kept coming back after that . . . trying to win [her] over[.]" She "would tell him to leave, and [she]'d get up and go in [her] front room" and find Smith "kicked back in the recliner." In other words, "he wasn't taking no for an answer," and "it was hard to get him to leave." Doss stated that on at least one occasion, Smith had pried the back door open to get into her home.

¶7. On the night of the break-in, she and Simmons, who had begun a relationship, were lying in bed, and the bedroom door was locked. Doss heard a "loud noise" and "looked up" to see Smith "standing in [the] bedroom door." Smith "cut the light on," and she observed that "[h]e had a gun in his left hand." Doss asked him what he was doing in her home, and "that's when he came to the bed, stepped over to the bed, and grabbed [her], and [her head] was between his body – his stomach and the side of the bed." After Smith grabbed her, he reached over and began "tussling" and "wrestling" with Simmons "over the gun." Doss explained that Smith apparently "got tired" and "ran out" of the home through the back door, which was "wide open" because "he came through" it when breaking into the home.

¶8. Once Smith was gone, Doss alerted the authorities of the crime and notified multiple family members. The police and her family members showed up at the home, causing "commotion[.]" Doss was speaking with the deputy when Smith "called [her] on Messenger." She did not answer, but her eldest son called Smith and had a conversation with him. When "[t]he crowd settled down," Doss began attempting to clean up the blood in her

4

bedroom and in the hallway. While she was cleaning, she found a magazine clip "on the floor by a container" in the bedroom and immediately alerted authorities. The deputy returned to the home to collect the clip as evidence. Doss further testified that her arm was bruised after the incident, and she said the hole in her bedroom door had not been there before Smith's break-in. As far as Smith carrying a weapon, Doss stated that he "always . . . carried that gun everywhere."

¶9.     The State also called Simmons, who testified that the break-in was the first time he had ever seen Smith. Simmons stated that Doss's bedroom door had been closed and locked that night. He was "sleeping" but was awoken when Smith "barged through the door." Simmons recounted that Smith "stood up and said a few words and he hit Ms. Doss in the face." Simmons "reached for [Smith,]" who then hit Simmons "across the face with a pistol." As a result, he began bleeding "out of the eye." Although Simmons could not see at the time of the altercation, he alleged he "know[s] what it felt like" and said it was a pistol.

¶10.     The two men "got in a tussle," and Simmons was able to get his pinkie finger "hooked in the trigger part of the gun." After they "struggled and wrestled . . . back and forth for a minute[, Smith] snatched" the gun back, which "ripped half [of Simmons's] finger off." Simmons stated that Smith grabbed the "butt of the gun[,]" and according to him, he "heard when [it] hit the floor[,]" and the clip fell out of the weapon. Simmons "told him . . . [his] clip done fell out," and Smith "hit [Simmons] across the head" using the pistol and "ran out the door." Simmons also testified that Doss's bedroom door was not damaged until after the break-in. The State introduced photographs of Simmons's "gash on the head" and eye injury.

5

On cross-examination, Simmons clarified that the reason he could not see Smith's pistol was because they "didn't have lights on."

¶11.    The State concluded its case by calling Investigator Dewayne Whetstone from the Franklin County Sheriff's Office, who was assigned to the case. Whetstone testified that Smith pled guilty to both Doss's and Simmons's simple assault affidavits at the preliminary hearing. Doss's affidavit alleged that Smith "did purposely, knowingly and unlawfully cause bodily injury to Doss by striking [her] in the head with his fist." Simmons's affidavit alleged that Smith "did purposely, knowingly and unlawfully cause bodily injury to Simmons by striking [him] in the head with a glock pistol." Whetstone also stated that while the incident occurred in April 2021, the guilty pleas were not made until September 2022 because they sent a warrant "out to Adams County, and it took that long to locate him." In other words, they "[c]ouldn't find him." The State rested its case after Whetstone's testimony.

¶12.    The defense proceeded to present Smith's case. First to testify was Lorenzo Rogers, who had known Smith for approximately fifteen years. He stated that Smith would "leave Franklin County to come take [Lorenzo's] kids to the rodeo" regularly. Smith told him that "he had to come from Franklin County to Natchez" to pick up the kids. It was Lorenzo's testimony that Smith was living with Doss in Franklin County at the time of the incident. On cross-examination, the State questioned the depth of Lorenzo's knowledge of where Smith lived. Lawrence maintained that Smith was living with Doss.

¶13.    Next, the defense called Smith's sister, Nancy Coleman. Nancy also testified that Smith and Doss had been living together in Franklin County. She stated that she was sure

of it because she "would give [Smith] a ride" for a period of time when he did not have a car. When Nancy gave Smith rides, she picked him up at Doss's home "countless" times. She further testified that she had never seen Smith with a gun.

¶14. Finally, Smith testified. He stated that he and Doss had been together for "quite a[]while." On the day of the incident, he was "going home[,]" referring to Doss's home, "to take a shower and go to sleep[.]" When he arrived, "the door was open[.]" Smith entered the home and went to the bedroom. He stated that he "stood there probably five minutes" before turning the light on. Once he did so, Doss "raised up and asked [him] questions[,]" and then "[Simmons] raised up." Smith stated that was when he "just lost it" because Doss was his fiancée at that time. He "got into it" with Doss before Simmons started "saying something" to him; Smith then "got into it" with him and left afterward. Smith further testified that he "[n]ever had a gun" but was wearing jewelry, "nuggets and dollar signs and boss rings and stuff like that." Smith alleged that the jewelry was the cause of the injuries Simmons suffered, not a gun. He stated that after the incident, he and Doss were "back and forth talking," and he would "send her money" for various reasons. However, he ended all contact with her after the justice court judge ordered it at the preliminary hearing.

¶15. The defense rested after Smith's testimony. Following closing arguments and deliberation, the jury found Smith guilty of both counts—burglary and possession of a weapon by a felon. The trial court denied Smith's post-trial motion challenging the weight of the evidence. The court held a sentencing hearing on June 2, 2023. While the State attempted to have Smith sentenced as a habitual offender, the court, concerned about the lack

7

of documentary evidence of a "thirty year"-old felony conviction, held it was "not going to sentence him as a habitual offender" because the court could not find beyond a reasonable doubt that Smith qualified as a habitual offender. The court did, however, apply the firearm enhancement. Smith was sentenced to serve twenty years for burglary and ten years for possessing a weapon as a felon, with the two to be served concurrently in the custody of the Mississippi Department of Corrections. He was additionally sentenced to serve a consecutive ten-year term in custody for the firearm enhancement. On July 31, 2023, Smith appealed.

## ANALYSIS

¶16. On appeal, Smith argues that the verdict was against the overwhelming weight of the evidence. "In determining . . . whether the weight of the evidence supports a verdict, the standard of review is that an appellate court will only disturb a verdict if the verdict is so contrary to the overwhelming weight of the evidence [that] to allow the verdict to stand **would sanction an unconscionable injustice**." *Hunt v. State*, 81 So. 3d 1141, 1146 (¶19) (Miss. Ct. App. 2011) (emphasis added) (citing *Ivy v. State*, 949 So. 2d 748, 753 (¶21) (Miss. 2007)). Crucially, "when evidence or testimony conflicts, the jury is the sole judge of the weight and worth of evidence and witness credibility." *Goode v. State*, 374 So. 3d 592, 606 (¶35) (Miss. Ct. App. 2023) (citing *Wayne v. State*, 337 So. 3d 704, 715 (¶39) (Miss. Ct. App. 2022)).

¶17. We address each conviction separately. For the burglary charge, Smith points out that he and two witnesses testified that he was living with Doss at the time of the burglary. He also presented testimony that on the night of the incident, he was going home to shower and

8

sleep. As for the charge of possession of a weapon by a felon, he states that Simmons's testimony that Smith "hit him in the head" with a gun and Doss's testimony that she saw him with a gun are not enough to prove he had a weapon that night. In addition, "[n]o gun was recovered[.]" In essence, he asserts that the evidence he presented disproved the evidence the State presented.

¶18. However, Smith's argument overlooks a key responsibility entrusted to juries: evaluating the credibility and veracity of witnesses. *See Sanders v. State*, 270 So. 3d 82, 86 (¶15) (Miss. Ct. App. 2018) ("[I]t is the role of the jury to evaluate the veracity of the witnesses." (quoting *Montana v. State*, 822 So. 2d 954, 965 (¶51) (Miss. 2002))). Indeed, jurors "have the duty[] to resolve the conflicts in the testimony they hear." *Groseclose v. State*, 440 So. 2d 297, 300 (Miss. 1983) (quoting *Gandy v. State*, 373 So. 2d 1042, 1045 (Miss. 1979)). When doing so, jurors "may **believe or disbelieve**, accept or reject the utterances of any witness." *Id.* (emphasis added). *Groseclose* goes on to explain:

> No formula dictates the manner in which jurors resolve conflicting testimony into finding[s] of fact sufficient to support their verdict. That resolution results from the jurors hearing and observing the witnesses as they testify, augmented by the composite reasoning of twelve individuals sworn to return a true verdict. A reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict. **It is enough that the conflicting evidence presented a factual dispute for jury resolution.**

*Id.* (emphasis added).

¶19. It is true the jury heard testimony that Smith lived at Doss's home, that he did not have felonious intentions when he entered the home, and that he did not have a weapon in his possession. It is **also** true that the jury heard Doss's testimony that Smith did not live with

9

her. The jury heard testimony from Doss about her breaking up with Smith and that he simply "wasn't taking no for an answer." The jury heard testimony that Smith entered the home with a weapon. The jury heard testimony from Simmons stating that he struggled with Smith over a gun and was eventually struck with it. The jury also reviewed photos of Doss and Simmons's injuries, the blood on the floor of Doss's bedroom, the damaged doors, and the magazine with stray bullets. In addition, the jury was presented with the simple assault affidavits Doss and Simmons filed in the justice court as well as the court-record abstracts indicating that Smith pled guilty to both accusations.

¶20. Thus, the jury was essentially presented with two completely different narratives of Smith's altercation with Doss and Simmons. It was then the jury's duty to evaluate the testimonial and physical evidence to determine whether Smith was guilty of the crimes charged. "Mississippi law states that matters regarding the weight and credibility accorded the evidence are to be resolved by the jury." *Knox v. State*, 912 So. 2d 1004, 1009 (¶23) (Miss. Ct. App. 2005) (citing *Harvey v. State*, 875 So. 2d 1133, 1136 (¶18) (Miss. Ct. App. 2004)). Accordingly, the jury deliberated and reached the conclusion that Smith was guilty of both burglary and possession of a weapon by a felon. Such a factual conclusion is not ours to reverse when supported by the evidence notwithstanding conflicts in that evidence that the jury resolved. The Mississippi Supreme Court instructs:

> [N]either this Court nor the Court of Appeals assumes the role of juror on appeal. We do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. **Those decisions belong solely to the jury.**

*Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017) (emphasis added). "Viewing the

10

evidence in the light most favorable to the verdict," *id.* at 292 (¶22), the jury's verdict was not contrary to the overwhelming weight of the evidence against Smith.

## CONCLUSION

¶21. Again, we do not "assume[] the role of juror on appeal[,]" nor do we "resolve conflicts between evidence." *Id.* at (¶1). After review, we find the verdict was not "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.* at (¶21). We find no abuse of discretion in the trial court's decision to deny a new trial. *See id.* at (¶22). Smith's convictions and sentences are affirmed.

¶22. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, McCARTY, SMITH, EMFINGER AND WEDDLE, JJ., CONCUR.**